KENNETH W. DONNELLY
E-mail: donnellyk@sec.gov
JAMES E. SMITH
E-mail: smithja@sec.gov

Attorneys for the Plaintiff
SECURITIES AND EXCHANGE COMMISSION
100 F Street, N.E.
Washington, DC 20549-5949
Telephone: (202) 551-4946 (Donnelly)
Telephone: (202) 551-5882 (Smith)
Facsimile: (202) 772-9292

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　Plaintiff,<br>　　v.<br>SASAN SABRDARAN, et al.<br>　　　　　Defendant. | Case No. 3:14-cv-4825 (JSC)<br><br>OPPOSITION OF PLAINTIFF SECURITIES AND EXCHANGE COMMISSION TO DEFENDANT SASAN SABRDARAN'S MOTION TO DISMISS COMPLAINT<br><br><u>Motions Hearing:</u><br>Honorable Jacqueline Scott Corley<br>Courtroom F, 15th Floor<br>February 26, 2015, 9:00 a.m. |

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

STATEMENT OF THE ISSUES TO BE DECIDED......................................................................1

FACTUAL BACKGROUND ......................................................................................................2

ARGUMENT ..........................................................................................................................4

THE COMPLAINT SATISFIES THE APPLICABLE PLEADING STANDARDS ....................4

I. The Commission Has Pled Sufficient Fact To Create A Reasonable Expectation That Discovery Will Reveal Evidence Of Violations. ........................................................4

II. Defendant Afsarpour's Trades And Spread Bets Were In Connection With The Purchase Or Sale Of A Security. ........................................................................................4

III. The Complaint Alleges Activities That Fall Within The Application Of The Exchange Act. ....................................................................................................................7

    A. Congress Overruled the Supreme Court's Decision in *Morrison* when it passed the Dodd-Frank Act. ........................................................................................7

    B. The Allegations in the Complaint State a Cause of Action Under the "Transactional" Test. ........................................................................................9

IV. Defendant Sabrdaran's Liability For Violations Of Section 10(b) and Rule 10b-5 Is Not Dependent On Allegations Related To Secondary Tippees. ..................11

V. If The Court Grants Defendant Sabrdaran's Motion, The Commission Should Be Given Leave To Amend. ........................................................................................14

CONCLUSION........................................................................................................................14

# TABLE OF AUTHORITIES

CASES

*Adam v. Silicon Valley Bancshares*,
    884 F. Supp. 1398 (N.D. Cal 1995)..................................................................................4

*Ambassador Hotel Co. v. Wei-Chuan Inv.*,
    189 F.3d 1017 (9th Cir. 1999)..........................................................................................5

*Blake v. Dierdorff*,
    856 F.2d 1365 (9th Cir. 1988)..........................................................................................4

*Chodos v. West Publ'g Co.*,
    292 F.3d 992 (9th Cir. 2002)..........................................................................................14

*Cornwell v. Credit Suisse Grp.*,
    729 F. Supp. 2d 620 (S.D.N.Y. 2010)...............................................................................8

*Dirks v. SEC*,
    463 U.S. 646 (1983)................................................................................................. 12-13

*Falkowski v. Imation Corp.*,
    309 F.3d 1123 (9th Cir. 2002) .........................................................................................5

*Foman v. Davis*,
    371 U.S. 178 (1962)........................................................................................................14

*Gilligan v. Jamco Dev. Corp.*,
    108 F.3d 246 (9th Cir. 1997) ..........................................................................................4

*Grunenthal GmbH v. Hotz*,
    712 F.2d 421 (9th Cir. 1983)...........................................................................................9

*In re Silicon Graphics Inc. Sec. Litig.*,
    183 F.3d 970 (9th Cir. 1999) ..........................................................................................4

*Liu v. Siemens A.G.*,
    978 F. Supp. 2d 325 (S.D.N.Y. 2013)..............................................................................8

*McGann v. Ernst & Young*,
    102 F.3d 390 (9th Cir. 1996) ..........................................................................................6

*Morrison v. Nat'l Australia Bank Ltd.*,
    561 U.S. 247 (2010) ................................................................................................ *passim*

*SEC v. Buntrock*,
    No. 02 C 2180, 2004 WL 1179423 (N.D. Ill., May 25, 2004) ..........................................13

*SEC v. C. Jones & Co.*,
    312 F. Supp. 2d 1375 (D. Colo. 2004) ..............................................................................13

*SEC v. Clark*,
    915 F.2d 439 (9th Cir. 1990) ...................................................................................... 12-13

*SEC v. Compania Internacional Financiera S.A.*,
    No. 11 Civ. 4904(DLC), 2011 WL 3251813 (S.D.N.Y. July 29, 2011) ........................ 8-11

*SEC v. Contorinis*,
    743 F.3d 296 (2d Cir. 2014) ...............................................................................................13

*SEC v. Gruss*,
    No. 11 Civ. 2420, 2012 WL 3306166 (S.D.N.Y. Aug. 13, 2012) ........................................8

*SEC v. ICN Pharm., Inc.*,
    84 F. Supp.2d 1097 (C.D. Cal. 2000) ..................................................................................4

*SEC v. Jakubowski*,
    150 F.3d 675 (7th Cir. 1998) ...............................................................................................6

*SEC v. Rana Research, Inc.*,
    8 F.3d 1358 (9th Cir. 1993) .................................................................................................5

*SEC v. Suterwalla*,
    No. 06–cv1446 DMS (LSP), 2008 WL 9371764 (S.D. Cal. Feb. 4, 2008) ..................... 6-7

*SEC v. Tourre*,
    No. 10 Civ. 3229(KBF), 2013 WL 2407172 (S.D.N.Y. June 4, 2013) ...............................8

*SEC v. Zandford*,
    535 U.S. 813 (2002) .........................................................................................................5, 7

*United States v. Corinthian Colls.*,
    655 F.3d 984 (9th Cir. 2011) .............................................................................................14

*United States v. Newman*,

    773 F.3d 438, 2014 WL 6911278 (2d Cir. 2014) ......................................................... 11-13

*Westlands Water Dist. V. Firebaugh Canal*,

    10 F.3d 667 (9th Cir. 1993) ..................................................................................................4

STATUTES AND RULES

15 U.S.C. § 78aa ..................................................................................................................8

Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b)...................................... *passim*

Rule 10b-5 of the Securities Exchange Act, 17 C.F.R. § 240.10b-5 ................................... *passim*

Dodd–Frank Wall Street Reform and Consumer Protection, Pub. L. No. 111–203, 124

    Stat. 1376 (2010)............................................................................................ 7-9

Federal Rule of Civil Procedure 12(b)(6) ..............................................................................1, 4, 8, 9

# INTRODUCTION

On October 30, 2014, plaintiff Securities and Exchange Commission ("Commission") filed its Complaint alleging with specificity the conduct of Defendants Sasan Sabrdaran ("Defendant Sabrdaran") and Farhang Afsarpour ("Defendant Afsarpour") in furtherance of their scheme to obtain a substantial personal benefit based on the use of material, nonpublic information. The Complaint alleges that Defendant Sabrdaran, an employee of InterMune, Inc. ("InterMune"), possessed confidential, material information regarding the potential approval of InterMune's drug Esbriet by a European Union regulatory body. The Complaint further alleges that Defendant Sabrdaran tipped this information to his friend Defendant Afsarpour, who traded and placed spread bets based on that information and urged others to trade as well. The nature of the inside information, the dates and times of the potential tips, and date, time, and nature of Afsarpour's trades and spread bets are specifically described in the Complaint.

Notwithstanding the Complaint's specificity, Defendant Sabrdaran has moved to dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Defendant Sabrdaran challenges the Commissions' allegations, contending that: 1) the Complaint does not allege the purchase or trade of securities; 2) the Complaint seeks an extraterritorial application of U.S. Securities laws; and 3) the Complaint fails to allege that others who profited from the actions of Defendants Sabrdaran and Afsarpour were aware of their fraudulent conduct. As stated more fully below, the Court should deny Defendant Sabrdaran's motion. The allegations in the Complaint properly state a claim for insider trading and provide Defendant Sabrdaran with adequate notice of that claim and the grounds upon which it rests.

# STATEMENT OF THE ISSUES TO BE DECIDED

The issues to be decided are:

1. Whether the Complaint alleges that Defendant Afsarpour's spread bets were in connection with the purchase of a security.
2. Whether the Complaint alleges a cause of action under Section 10(b) and Rule 10b-5 that involved security transactions on domestic exchanges.

3. Whether the Complaint properly alleges that Defendant Sabrdaran received a benefit when he tipped Defendant Afsarpour confidential, material non-public information.

4. Whether the Commission should be granted to leave to amend if the Court dismisses the Complaint.

**FACTUAL BACKGROUND**

In March 2010, InterMune, Inc. ("InterMune") submitted an application for marketing approval of the drug Esbriet to the European Medicines Agency ("EMA") seeking approval to market the drug Esbriet in the European Union ("EU") for the treatment of patients with idiopathic pulmonary fibrosis, a fatal lung disease. (Compl. ¶ 12.) Defendant Sabrdaran was part of a small group of InterMune employees charged with shepherding Esbriet through the regulatory process (the "Esbriet Team"), and therefore was privy to material nonpublic communications about Esbriet's progress. (Compl. ¶¶ 1, 16.) Defendant Sabrdaran was also aware of his obligation to keep confidential any material nonpublic information he received regarding Esbriet. (Compl. ¶ 24.)

On or about December 2, 2010, the Esbriet Team, including Defendant Sabrdaran, received positive information and learned that Esbriet was likely to be approved at the EU regulatory body's meeting scheduled for December 13 – 16, 2010. (Compl. ¶¶ 18-19). Defendant Sabrdaran and Defendant Afsarpour, a resident of the United Kingdom, had been friends for many years and often engaged in long telephone conversations and regular visits in person. (Compl. ¶ 25.) Defendant Afsarpour knew that Defendant Sabrdaran worked at InterMune. (Compl. ¶ 48.) Reflective of their close friendship, Defendant Sabrdaran and Defendant Afsarpour communicated by phone and text message and met in person at various times throughout early December 2010. (Compl. ¶¶ 25-26.) Subsequent to some of these early-December communications, Defendant Afsarpour placed orders to buy spreads bets on InterMune common stock with IG Index ("IG"), an international provider of contracts for difference and online financial spread betting firm based in London, United Kingdom. (Compl. ¶¶ 26, 29-30.) As alleged in the Complaint, a spread bet is an agreement in which the purchaser purchases from a counterparty the opportunity to profit from changes in the price of an

| | |
|---|---|
|1| underlying asset, in this case, InterMune common stock and InterMune call options. (Compl. ¶|
|2| 27.)|

On December 12, 2010, and the days immediately following, Defendant Afsarpour urged several friends to invest in InterMune. (Compl. ¶¶ 31-33.) From December 13 through 15, 2010, using the monies his friends had given him and his own funds, Defendant Afsarpour purchased additional InterMune spread bets from IG. (Compl. ¶¶ 35-36.) Defendant Afsarpour was aware that at the time he placed each of his spread bet orders that IG may hedge his bets by purchasing the underlying security in the market. (Compl. ¶¶ 37-38.) Consistent with his understanding, IG hedged its exposure on Defendant Afsarpour's spread bets on InterMune call options. (Compl. ¶ 38.) On or about December 16, 2010, Defendant Afsarpour also bought InterMune common stock through a broker/dealer located in New York City. (Compl. ¶ 34.) On or about December 16, 2010, two other people that Defendant Afsarpour had tipped also traded -- one bought InterMune common stock on the NASDAQ Exchange and the other bought a spread bet on InterMune call options. (Compl. ¶¶ 40-46.)

On December 17, 2010, InterMune announced the EU advisory committee had issued a positive opinion for Esbriet, causing InterMune's stock and options prices to soar. (Compl. ¶ 21.) By December 20, 2010, the value of Defendant Afsarpour's common stock and spread bets, which were tied to the prices of InterMune's common stock and call options, also increased. (Compl. ¶ 21.) Including the imputed profits of the people Defendant Afsarpour urged to invest in InterMune, the imputed profits to Defendant Sabrdaran and Defendant Afsarpour totaled $1,077.069. (Compl. ¶ 46.) Several months after the EU announcement regarding Esbriet, Defendant Afsarpour gave Defendant Sabrdaran $26,000. (Compl. ¶ 49.)

**ARGUMENT**

**THE COMPLAINT SATISFIES THE APPLICABLE PLEADING STANDARDS**

**I. The Commission Has Pled Sufficient Fact To Create A Reasonable Expectation That Discovery Will Reveal Evidence Of Violations.**

In determining whether the Complaint states a claim upon which relief can be granted, thus meeting the standards of Rule 12(b)(6), the Court must accept as true all factual allegations in the Complaint and must draw all reasonable inferences from those allegations, construing them in a light most favorable to the plaintiff. *See In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 983 (9th Cir. 1999); *see also SEC v. ICN Pharm., Inc.*, 84 F. Supp.2d 1097, 1098 (C.D. Cal. 2000) (citing *Westlands Water Dist. V. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir. 1993)); *Adam v. Silicon Valley Bancshares*, 884 F. Supp. 1398, 1400 (N.D. Cal 1995) ("In ruling on a motion to dismiss, district courts must accept all material allegations… in the complaint as true, and resolve all doubts in favor of the plaintiff." (citing *Blake v. Dierdorff*, 856 F.2d 1365, 1368 (9th Cir. 1988))). Indeed, motions to dismiss are generally viewed with disfavor under these liberal pleading standards and are rarely granted. *See Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).

**II. Defendant Afsarpour's Trades And Spread Bets Were In Connection With The Purchase Or Sale Of A Security.**

Defendant Sabrdaran first argues that the Court must dismiss the Complaint because the spread bets purchased by Defendant Afsarpour were not "securities" as defined by Section 10(b) and Rule 10b-5. (Def. Mot. 6-9.) Defendant Sabrdaran initially appears to contend that Defendant Afsarpour's spread bets were not made "in connection with" the sale or purchase of a security (Def. Mot. 6.) However, Defendant Sabrdaran then argues only that spread bets are not among the specifically enumerated instruments that the Securities Act and the Exchange Act define as a "security," and therefore spread bets are allegedly not "securities." (Def. Mot. 7.) This effort is misplaced. At no time has the Commission argued that the spread bets are securities, nor does it concede that they are not. Rather, the Commission alleges that Defendant Afsarpour's fraudulent spread bet purchases were "in connection with" the purchase and sale of

InterMune securities. At no point does Defendant Sabrdaran contest, or even address, that Defendant Afsarpour's spread bet purchases were "in connection with" the purchase or sale of security. In failing to do so, Defendant Sabrdaran's argument simply falls short and cannot be the basis dismissal of the Complaint.

Section 10(b) of the Securities Exchange Act makes it "unlawful for any person . . . [t]o use or employ, **in connection with** the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C. § 78j(b) (emphasis added). Rule 10b-5, which implements this provision, prohibits the use "in connection with the purchase or sale of any security" of "any device, scheme, or artifice to defraud" or any other "act, practice, or course of business" that "operates . . . as a fraud or deceit." 17 C.F.R. § 240.10b-5.

The Supreme Court has often stated that the Exchange Act should be "construed 'not technically and restrictively, but flexibly to effectuate its remedial purposes.'" *SEC v. Zandford*, 535 U.S. 813, 819 (2002) (citations omitted). In *Zandford*, the Supreme Court held that in order for a fraudulent scheme and or device to meet the "in connection with" requirement of Section 10(b), "the securities transaction[] and breaches of fiduciary duty [must] *coincide.*" (emphasis added). 535 U.S. at 824-25. The Ninth Circuit has adopted the *Zandford* standard, noting that the allegations of fraud must "'coincide' with the securities transaction" and be "easily characterized as having 'more than some tangential relation to' the securities themselves." *Falkowski v. Imation Corp.*, 309 F.3d 1123, 1131 (9th Cir. 2002) (*citing Ambassador Hotel Co. v. Wei-Chuan Inv.*, 189 F.3d 1017, 1026 (9th Cir. 1999) ("The court should consider whether the plaintiff has shown some causal connection between the fraud and the securities transaction in question.")) *opinion amended*, 320 F3d 905 (9th Cir. 2003). The Ninth Circuit has held that "in connection with" is met if the alleged fraud "somehow touches upon" or has "some nexus" with "any securities transaction," and the meaning of "in connection with" in Commission actions "remains as broad and flexible as is necessary to accomplish the statue's protective purposes." *SEC v. Rana Research, Inc.*, 8 F.3d 1358, 1362 (9th Cir. 1993) (citations omitted). Finally, the Ninth Circuit has held that liability under Section 10(b) extends "beyond those who actually

1  trade securities to include those who know their fraudulent activities will affect the market."
2  *McGann v. Ernst & Young*, 102 F.3d 390, 395 (9th Cir. 1996); *see also SEC v. Jakubowski*, 150
3  F.3d 675, 680 (7th Cir. 1998) (misrepresentation satisfies the "in connection with" test "if it
4  influences an investment decision").

5  In determining if the Complaint has properly alleged that the spread bets were "in
6  connection with" and coincided with a purchase or sale of a security, the case of *SEC v.*
7  *Suterwalla* is instructive. No. 06–cv1446 DMS (LSP), 2008 WL 9371764 (S.D. Cal. Feb. 4,
8  2008). In that case, the defendant purchased call options for Petco on a domestic exchange and
9  placed spread bets on the same security with an English brokerage house. *Id.* at *1. In seeking
10 to dismiss the complaint, the defendant argued, just as Defendant Sabrdaran argues here, that the
11 spread bets fell outside of the Securities Exchange Act because spread bets were not "securities."
12 The *Sutterwalla* court rejected this argument. Instead, the court held that because the English
13 brokerage house purchased Petco call options to hedge the defendant's spread bets, a fact the
14 defendant was aware of, the "connection between the insider trading and the spread bets is not so
15 attenuated as to deprive the SEC of its' enforcement authority over an individual in Britain." *Id.*
16 at *3. This Court should follow the rationale in *Sutterwalla* and reject Defendant Sabrdaran's
17 argument.

18 In the Complaint in this case, the Commission alleges that following Defendant
19 Sabrdaran's tip to Defendant Afsarpour, Defendant Afsarpour began purchasing spread bets
20 based on InterMune common stock and InterMune call options from IG Index, a London
21 brokerage house. (Compl. ¶ 36.) The Complaint further alleges that IG Index made Defendant
22 Afsarpour aware, both verbally and in writing, that it may hedge its liability by purchasing
23 "analogous positions" in the "underlying market." (Compl. ¶¶ 37-38.) The Complaint also
24 alleges that IG Index would not post the spread bet to Defendant Afsarpour's account until after
25 IG Index had purchased the underlying securities in the U.S. market. (Compl. ¶ 38.) It is
26 reasonable to infer from these allegations that Defendant Afsarpour knew that once he placed his
27 spread bets, that IG Index had also purchased corresponding securities here in the United States
28 as a hedge against Afsarpour's bet. Thus, just as in *Suterwalla*, the Complaint properly asserts

SEC V. SASAN SABRDARAN ET AL                    6           PLAINTIFF'S OPPOSITION TO DEFENDANT
CASE NO. 3:14-CV-4825-JSC                                SABRDARAN'S MOTION TO DISMISS

1  that Defendant Afsarpour was aware of IG Index's intent to hedge, and that it actually did hedge,
2  its liability by purchasing securities here in the United States.

3  Additionally, the court in *Suterwalla* stated that the defendant's purchase of spread bets
4  was part of a common scheme to profit from the material, nonpublic information and this scheme
5  included the purchase of call options (which are undeniably securities). *Suterwalla*, 2008 WL
6  9371764, at *4. As the *Suterwalla* court stated, the entire scheme to defraud the market, which
7  included the use of the inside information, the spread bets, and the call options, was within the
8  Commission's jurisdiction. *Id.* at *4 (citing *Zandford*, 535 U.S. at 821-22). As alleged in the
9  Complaint (Compl. ¶¶ 34-39), Defendant Afsarpour participated in a similar scheme, purchasing
10 both common stock on an exchange in the United States (clearly "securities") and the spread
11 bets, all which satisfied the "in connection with" requirement. Thus, the Complaint alleges that
12 Defendant Afsarpour's conduct was "in connection with" the purchase or sale of a security and
13 Defendant Sabrdaran's argument to the contrary fails.

**III. The Complaint Alleges Activities That Fall Within The Application Of The Exchange Act.**

Defendant Sabrdaran next argues that the Complaint seeks to apply Section 10(b) and Rule 10b-5 extraterritorially in violation of *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010). Specifically, Defendant Sabrdaran contends that the *Morrison* Court's abrogation of the "conducts and effects" test and adoption of the "transactional test" requires dismissal of the Complaint because it does not contain allegations demonstrating a purchase or sale of a security made in the United States, or a transaction involving a security listed on a domestic exchange. (Def. Mot. 9.)

**A. Congress Overruled the Supreme Court's Decision in *Morrison* when it passed the Dodd-Frank Act.**

Defendant Sabrdaran's argument that *Morrison* rejected the conduct and effects test fails to discuss the impact of Congress's enactment of the Dodd–Frank Wall Street Reform and Consumer Protection, specifically Section 929P(b), on *Morrison* and its progeny. Pub. L. No. 111–203, 124 Stat. 1376 (2010) (the "Dodd–Frank Act"). Specifically, the Dodd-Frank Act,

which was passed after the Supreme Court's ruling in *Morrison*, amended Section 27(b) of the Securities Exchange Act to read:

> *Extraterritorial Jurisdiction*. The district courts of the United States . . . shall have jurisdiction of an action or proceeding brought or instituted by the Commission . . . alleging a violation of the antifraud provisions of this title involving –
>
>     (1) conduct within the United states that constitutes significant steps in furtherance of the violation, even if the securities transaction occurs outside the United States and involves only foreign investors; or
>
>     (2) conduct occurring outside the United States that has a foreseeable substantial effect within the United States."

Securities Exchange Act of 1934 § 27(b); 15 U.S.C. § 78aa.

Courts interpreting this statute have commented that Congress expanded the Commission's authority to reach transnational securities fraud by codifying the conduct and effects test rejected by the Supreme Court in *Morrison*. *See, e.g.*, *Liu v. Siemens A.G.*, 978 F. Supp. 2d 325, 328 (S.D.N.Y. 2013) ("Section 929P(b) permits the SEC to bring enforcement actions for certain conduct or transactions outside the United States."); *SEC v. Tourre*, No. 10 Civ. 3229(KBF), 2013 WL 2407172, at *1 n.4 (S.D.N.Y. June 4, 2013) (929P(b) "effectively reversed *Morrison* in the context of SEC enforcement actions"); *SEC v. Gruss*, No. 11 Civ. 2420, 2012 WL 3306166, at *3 (S.D.N.Y. Aug. 13, 2012) ("Section 929P(b) . . . allows the SEC to commence civil actions extraterritorially in certain cases."); *SEC v. Compania Internacional Financiera S.A.*, No. 11 Civ. 4904(DLC), 2011 WL 3251813, at *6 n.2 (S.D.N.Y. July 29, 2011) ("It may be that [929P(b)] was specifically designed to reinstate the Second Circuit's 'conduct and effects' test."); *Cornwell v. Credit Suisse Grp.*, 729 F. Supp. 2d 620, 627 n.3 (S.D.N.Y. 2010) ("[I]n legislation recently enacted, Congress explicitly granted federal courts extraterritorial jurisdiction under the conduct or effect test for proceedings brought by the SEC.").

In applying the conducts and effects test codified by the Dodd-Frank Act, the allegations in the Complaint are sufficiently pled under Rule 12(b)(6). In the Ninth Circuit, whether the conduct and effects test has been satisfied depends on "whether defendant's conduct [that

involved the use of instrumentalities of interstate commerce] in the United States was significant with respect to the alleged violation . . . and whether it furthered the fraudulent scheme . . . . The conduct in the United States cannot be merely preparatory . . . and must be material, that is, directly cause the losses." *See Grunenthal GmbH v. Hotz*, 712 F.2d 421, 424 (9th Cir. 1983). Further, the Ninth Circuit has stated "consistent with the established objectives of the federal securities laws, we have recognized that 'the jurisdictional hook need not be large to fish for securities law violations.'" *Id.* (citation omitted).

In this case, the Complaint alleges the tip by Defendant Sabrdaran, Defendant Afsarpour's purchases of common stock, and the purchases by Hairdresser No. 1, all occurred in the United States. (Compl. ¶¶ 26, 30, 34, 44-45.) Under the conduct and effects test, these allegations are significant with respect to the alleged insider trading violation. Indeed, the purchases of InterMune common stock by Defendant Afsarpour and Hairdresser No. 1 each caused loss to the counterparties who sold InterMune stock. In addition, as alleged in the Complaint, IG Index hedged Defendant Afsarpour's spread bets through purchases of InterMune common stock and call options, both of which were traded in the United States. Defendant Afsarpour's spread bets furthered the fraudulent scheme of insider trading and directly caused the losses to the parties who traded in the United States opposite IG Index. Thus, under the Ninth Circuit's conducts and effects test, the Compliant properly alleges a claim upon which relief can be granted and the Court should reject Defendant Sabrdaran's argument.

**B.     The Allegations in the Complaint State a Cause of Action Under the "Transactional" Test.**

Even if the Court is not persuaded that the Dodd-Frank Act legislatively overruled *Morrison* and applies the "transactional" test, the Court should conclude that the allegations in the Complaint sufficiently state a cause of action under Rule 12(b)(6).

In *Morrison*, the Court considered the extraterritorial reach of federal securities laws. In deciding whether Section 10(b) applied to transactions that occurred outside of the United States, the Court held that "there is no affirmative indication in the Exchange Act that § 10(b) applies extraterritorially, and we therefore conclude that it does not." *Morrison*, 561 U.S. at 265. The

1  Court further stated that "[t]he focus of the Exchange Act is . . . upon purchases and sales of
2  securities in the United States." *Id.* at 266. As such, the Court determined that Section 10(b)
3  "reaches the use of a manipulative or deceptive device or contrivance only in connection with the
4  purchase or sale of a security listed on an American stock exchange, and the purchase or sale of
5  any other security in the United States." *Id.* at 273.

The case of *SEC v. Compania Internacional Financiera S.A, et al.*, 2011 WL 3251813, provides guidance as to when an international transaction such as a spread bet meets the standard set forth in *Morrison*. Contrary to Defendant Sabrdaran's argument (Def. Mot. 11), *Compania* is very much on point to the transactions at issue here. In *Compania*, defendant Chartwell Asset Management Services ("Chartwell") purchased several contracts for difference ("CFD") based on the price of Arch Chemicals ("Arch") stock. *Id.* at *1. A CFD is similar to the spread bets at issue in this case in that "purchasers acquire the future price movement of the underlying company's common stock (positive or negative) without taking formal ownership of the underlying shares." *Id.* at *3. Also, the CFD broker purchased shares of the underlying common stock in advance of pricing the CFD. *Id.* at *6. In *Compania*, Chartwell purchased CFDs in London and knew that at the time of the purchase, the London brokerage house would be purchasing Arch stock on a domestic market in the United States. *Id.* at *6-7.

In ruling that the London-based CFD purchases fell within the Commission's regulatory authority, the court first determined that the alleged insider trading based on the purchase of the CFDs fell squarely within Section 10(b) and Rule 10b-5 because the purchase of the CFDs was "clearly the use of a manipulative or deceptive device or contrivance . . . in connection with the purchase or sale of a security listed on an American stock exchange." *Id.* at *6 (quoting *Morrison*, 561 U.S. at 273) (citing *SEC v. Wyly*, 788 F. Supp. 2d 92, 2011 WL 1226381, at *16 (S.D.N.Y. 2011) (foreign trading swap agreement referencing domestic security that would be purchased or sold by broker met the "in connection with" requirement)). In further rejecting Chartwell's argument that the purchase of the CFDs did not enter into "transactions in securities listed on domestic exchanges" or "domestic transactions in other securities," the court found that "[e]ven though Chartwell may have engaged in . . . insider trading by trading CFDs in London

that were tied to transactions on the NYSE in Arch's domestic securities, this does not negate the fact that its alleged deceptive conduct involved securities listed on a domestic exchange." *Compania*, 2011 WL 3251813, at *6.

In this case, the Complaint alleges that IG Index told Defendant Afsarpour that it may hedge its losses by purchasing InterMune common stock on an American exchange and that IG Index would not post Defendant Afarpour's spread bets until IG Index had purchased its corresponding hedge. (Compl. ¶¶ 37-38.) The Complaint alleges the dates and timing of Defendant Asfarpour's spread bets. (Compl. ¶ 37.) It is reasonable to infer from these allegations that once Defendant Afsarpour received notice that his spread bets posted, he knew that IG Index had purchased InterMune common stock as a hedge against his spread bets, just as the defendant did in *Compania*. Finally, Defendant Afsarpour purchased seventy-five shares of InterMune stock on December 16, 2010, **on a domestic exchange** through an account held in his name at National Securities Corp. in New York City. (Compl. ¶ 34.) This purchase was part of the scheme to profit from the use of material, nonpublic information involving the Esbriet approval process supplied by Defendant Sabrdaran. Clearly, as in *Compania*, the total sum of Defendant Afsarpour's spread bets and stock purchases were transactions involving domestic purchases of stock and transactions involving securities listed on a domestic exchange. Thus, the allegations in the Complaint meet the standards in *Morrison* and the Court should deny Defendant Sabrdaran's motion to dismiss.

**IV.  Defendant Sabrdaran's Liability For Violations Of Section 10(b) and Rule 10b-5 Is Not Dependent On Allegations Related To Secondary Tippees.**

Defendant Sabrdaran argues that the Court should dismiss the Complaint because the Commission failed to allege facts both that Pharmacist No. 1 and Hairdresser No. 1 knew of his fraudulent disclosure of material nonpublic information and that Defendant Afsarpour benefited from tipping these individuals. (Def. Mot. 14.) Defendant's Sabrdaran's argument, and its reliance on *United States v. Newman*, 773 F.3d 438, 2014 WL 6911278, at *8 (2d Cir. 2014), is misplaced and provides no basis for a dismissal of the Complaint.

In *Newman*, the U.S. Court of Appeals for the Second Circuit held that to establish tippee

1   liability, the government must show that the tippee knew that the tipper breached a duty of

2   confidentiality and that the tipper received a benefit for the breach. 773 F.3d at 449.

3         In the Complaint, the Commission alleges insider trading claims against Defendants

4   Sabrdaran and Afsarpour. Defendant Sabrdaran concedes that the Complaint contains

5   allegations that Defendant Afsarpour knew that Defendant Sabrdaran had a duty to maintain the

6   confidentiality of InterMune's information. (Def. Mot. 15.) Contrary to Defendant Sabrdaran's

7   argument, the Complaint does allege that Defendant Afsarpour knew of the personal benefit

8   Defendant Sabrdaran received for this breach – Defendant Afsarpour gave him $26,000.

9   (Compl. ¶ 48.) The Complaint also alleges a long-standing friendship between the two

10  defendants that included regular intercontinental visits, long distance phone conversations, and

11  care for ailing parents. (Compl. ¶ 25.) Under Ninth Circuit law, the Court can infer from these

12  allegations of friendship that Defendant Sabrdaran received or expected to receive a personal

13  benefit in tipping confidential information to his friend. *See SEC v. Clark*, 915 F.2d 439, 454

14  (9th Cir. 1990) (tipper cannot "eva[de] Rule 10b-5 liability by <u>either</u>: (1) enriching a friend or

15  relative; or (2) tipping others with the expectation of reciprocity") (emphasis added).[1] In total,

16  the allegations in the Complaint, and the inferences the Court can reasonable draw from them,

17  support the Commission's claim for insider trading against Defendants Sabrdaran and Afsarpour

18  under *Dirks v. SEC*, 463 U.S. 646 (1983), or *Newman*, 773 F.3d 438.

19        With regard to the allegations about others who profited from Defendant Sabrdaran's

20  fraudulent tip, Defendant Sabrdaran is correct that that Complaint does not allege that Pharmacist

---

[1] The Commission calls into question the applicability of *Newman* to this case. The Second Circuit panel's apparent holding that friendship is an insufficient basis from which to infer a personal benefit conflicts directly with both *Dirks* and established Ninth Circuit case law. *See Dirks*, 463 U.S. at 659, 663-64 (tipper benefit "also exist[s]" where the insider has an "intention to benefit the particular recipient," such as "when an insider makes a gift of confidential information to a trading relative or friend. The tip and trade resemble trading by the insider himself followed by a gift of the profits to the recipient."); *Clark*, 915 F.2d at 454 (relevant quote above). On January 23, 2015, the Department of Justice filed a petition for rehearing *en banc* in the *Newman* case, and on January 29, the Second Circuit ordered the defendants to respond to the government's petition. In any case, since the Complaint alleges that Defendant Afsarpour gave Defendant Sabrdaran $26,000, the Court need not even address this issue at this time.

1  No.1 and Hairdresser No.1 were aware of Defendant Sabrdaran's duty, his breach of that duty, or
2  any benefit that he received. Nor does the Complaint contain any allegations that Pharmacist
3  No.1 and Hairdresser No.1 were aware of a benefit that Defendant Afsarpour received for his tip
4  to them. Indeed, there is nothing in the Complaint that seeks to hold Pharmacist No.1 and
5  Hairdresser No.1 liable for insider trading at all. The allegations in the Complaint regarding the
6  trading activities of Pharmacist No. 1 and Hairdresser No.1 do not relate to liability. Instead,
7  these allegations are relevant to the calculation of the proper disgorgement amount that is
8  attributable to Defendants Sabrdaran and Afsarpour for their illegal conduct. *See Clark*, 915
9  F.2d at 453-54 (stating that tipper can be required to disgorge a third party's profits even if the
10 third party is not liable for insider trading) (*citing Dirks*, 463 U.S. at 664); *see also SEC v.*
11 *Contorinis*, 743 F.3d 296, 302 (2d Cir. 2014) (stating that an "insider trader may be ordered to
12 disgorge not only the unlawful gains that accrue to the wrongdoer directly, but also the benefit
13 that accrues to third parties whose gains can be attributed to the wrongdoer's conduct.") *petition*
14 *for cert. filed*, 83 U.S.L.W 3270 (Oct. 20, 2014) (No. 14-471).

15  Essentially, Defendant Sabrdaran contends that, under *Newman*, the Court must dismiss
16 the Complaint *against Defendant Sabrdaran* because the Complaint does not allege a cause of
17 action *against Pharmacist No.1 and Hairdresser No.1*. This argument simply makes no sense --
18 the Commission does not to seek to hold Pharmacist No. 1 and Hairdresser No.1 liable for their
19 trading. Rather the Commission seeks to hold Defendants Sabrdaran and Afsarpour responsible
20 for the full amount of the ill-gotten gains associated with their conduct. At bottom, this is a
21 remedies argument that is best reserved for that phase of this litigation, and provides no basis for
22 a dismissal of the entire Complaint against Defendant Sabrdaran. *See SEC v. Buntrock*, No. 02 C
23 2180, 2004 WL 1179423, at *2 (N.D. Ill., May 25, 2004) ("[T]o the extent that the defendants
24 challenge the SEC's 'pleading' of the disgorgement remedy, that challenge is rejected as
25 untimely because none of the defendants have yet been found liable for any securities
26 violation"). *See also SEC v. C. Jones & Co.*, 312 F. Supp. 2d 1375, 1382 (D. Colo. 2004)
27 (finding that motion to dismiss claims for injunctive relief was premature).
28

## V. If The Court Grants Defendant Sabrdaran's Motion, The Commission Should Be Given Leave To Amend.

In the unlikely event that the Court grants Defendant Sabrdaran's motion to dismiss, the Court should give the Commission leave to amend its Complaint. As the Court is aware, leave to amend is liberally granted. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Chodos v. West Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002). Defendant Sabrdaran contends that the Court should not give the Commission leave to amend because such amendments would be futile. (Def. Mot. 15.) Futility is established only when the complaint "could not [possibly] be saved by any amendment." *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011) (citation omitted). At this stage of the litigation, even Defendant Sabrdaran admits (at pages 8, 12, 14, and 15 of his motion to dismiss) that additional facts could support the Commission's claim. As such, under the liberal standards afforded parties seeking to amend their pleadings, if the Court rules in Defendant Sabrdaran's favor and dismisses the Commission's Complaint, the Court should permit the Commission leave to amend its Complaint to cure any claimed deficiencies.

## CONCLUSION

For all the reasons stated above, the Court should deny Defendant Sabrdaran's motion to dismiss the Commission's Complaint.

Dated: February 2, 2015         Respectfully submitted,

/s/ James E. Smith
KENNETH W. DONNELLY
JAMES E. SMITH

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION