1  KENNETH W. DONNELLY
   E-mail: donnellyk@sec.gov
2  JAMES E. SMITH
   E-mail: smithja@sec.gov
3
   Attorneys for the Plaintiff
4  SECURITIES AND EXCHANGE COMMISSION
   100 F Street, N.E.
5  Washington, DC 20549-5949
   Telephone: (202) 551-4946 (Donnelly)
6  Telephone: (202) 551-5882 (Smith)
   Facsimile:  (202) 772-9292
7

8

9                      UNITED STATES DISTRICT COURT

10                    NORTHERN DISTRICT OF CALIFORNIA

11                        SAN FRANCISCO DIVISION

12  SECURITIES AND EXCHANGE              Case No. 3:14-cv-4825 (JSC)
    COMMISSION,
13
                Plaintiff,              NOTICE OF MOTION AND PLAINTIFF
14         v.                           SECURITIES AND EXCHANGE
                                        COMMISSION'S MOTION FOR PARTIAL
15  SASAN SABRDARAN, et al.             SUMMARY JUDGMENT; MEMORANDUM
                                        OF POINTS AND AUTHORITIES IN
16              Defendant.              SUPPORT THEREOF

17
                                        Motions Hearing:
18                                      Honorable Jacqueline Scott Corley
                                        Courtroom F, 15th Floor
19                                      August 25, 2015, 9:00 a.m.

20

21

22

23

24

25

26

27

28

1    **TO ALL PARTIES AND THEIR RESPECTIVE ATTONREYS OF RECORD:**

2         **PLEASE TAKE NOTICE:**  On August 25, 2016, at 9:00 am, or as soon thereafter as

3    may be heard, in the United States District Court for the Northern District of California, San

4    Francisco Division, Courtroom F, 15th Floor, located at 450 Golden Gate Avenue, San Francisco,

5    CA 94102, Plaintiff Securities and Exchange Commission ("SEC") will, and hereby does, move

6    this Court for an order of partial summary judgment.

7         This motion is based upon this Notice of Motion; the attached Memorandum of Points

8    and Authorities; the Court's records and files in this action; and such further argument as may be

9    presented to or at the time of the hearing on this motion.

10

11   Dated:  June 21, 2016                    Respectfully submitted,

12

13                                           /s/ James E. Smith
                                             KENNETH W. DONNELLY
14                                           JAMES E. SMITH

15                                           Attorneys for Plaintiff
                                             SECURITIES AND EXCHANGE COMMISSION

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2        Plaintiff, the Securities and Exchange Commission ("SEC"), respectfully submits this

3    memorandum in support of its motion for partial summary judgment on the issue of whether

4    spread bets placed by Defendant Farhang Afsarpour ("Afsarpour") with IG Index ("IG") were

5    made "in connection with" the purchase or sale of a securities for purposes of Section 10(b) of

6    the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder.

7    **INTRODUCTION**

8        The SEC's amended complaint alleges that Defendants Sasan Sabrdaran ("Sabrdaran")

9    and Afsarpour violated Section 10(b) of the Exchange Act and Rule 10b-5 thereunder when

10   Sabrdaran tipped material, non-public information from his employer, InterMune, Inc.

11   ("InterMune") to his good friend Afsarpour.  Armed with a tip, Afsarpour purchased InterMune

12   common stock via a broker in the United States, and he also placed spread bets based on

13   InterMune stock and options via IG, a United Kingdom-based spread betting firm.  IG in turn

14   hedged Afsarpour's spread bets, purchasing InterMune stock and options in the U.S. market.

15   **STATEMENT OF THE ISSUE TO BE DECIDED**

16       The issue to be decided is whether, as a matter of law, Defendant Afsarpour's spread bets

17   were in connection with the purchase or sale of a security.

18   **RELEVANT FACTUAL BACKGROUND**

19       In early 2010, InterMune submitted an application for marketing approval of the drug

20   Esbriet to the European Medicines Agency seeking approval to market the drug Esbriet in the

21   European Union ("EU") for the treatment of patients with idiopathic pulmonary fibrosis, a fatal

22   lung disease.  (Am. Compl. ¶ 12; Smith Decl. Ex. 1, p. 46).  Sabrdaran was part of a small group

23   of InterMune employees charged with shepherding Esbriet through the regulatory process and

24   therefore was privy to material nonpublic communications about the status of the regulatory

25   

26   progress.  (Am. Compl. ¶¶ 1, 16; Smith Decl. Ex. 2, p. 67).

27       On December 9, 2010, Sabrdaran learned that Esbriet was likely to be approved at the EU

28   regulatory body's meeting scheduled for December 13–16, 2010.  (Am. Compl. ¶¶ 22; Smith

Decl. Ex. 3).  On December 10, 2010, Sabrdaran and Afsarpour spoke by phone and following this conversation, Afsarpour placed orders to buy spreads bets with IG.  (Am. Compl. ¶¶ 26, 29-30; Smith Decl. Ex. 4, pp. 402-03; Ex. 6).  A spread bet is defined as an agreement in which the purchaser purchases from a counterparty the opportunity to profit from changes in the price of an underlying asset.  (Am. Compl. ¶ 27; Smith Decl. Ex. 5, pp. 12-13).  In this case, the underlying asset on which Afsarpour purchased his spread bets was InterMune common stock and InterMune call options, traded in the United States.  (Smith Decl. Ex. 6).  When Afsarpour purchased these bets he was made aware that IG may hedge his purchases by opening analogous positions in the underlying market for securities in InterMune.  (Smith Decl. Ex. 6,  Spread Betting Customer Agreement, Section 20 "Market Abuse" ).

From December 13 through 15, 2010, Afsarpour purchased additional InterMune spread bets from IG.  (Am. Compl. ¶¶ 35-36; Smith Decl. Ex. 6).  As a means to limiting its exposure against Afsarpour's spread bets, from December 10 through December 15, IG purchased 14,600 shares of InterMune common stock from an exchange in the United States.  (Am. Compl. ¶ 39; Smith Decl. Ex. 6).  IG hedged Afsarpour's spread bets based on InterMune options in a similar fashion, when, on December 13, 2010, IG purchased 237 March 2011 InterMune options from an exchange in the United States in connection with Afsarpour's purchase of spread bets on 237 March 2011 InterMune options.  (Am. Compl. ¶ 39; Smith Decl. Ex. 6).  On December 17, 2010, InterMune announced the EU advisory committee had issued a positive opinion for Esbriet, causing InterMune's stock and options prices to soar.  (Am. Compl. ¶ 21; Smith Decl. Ex. 7).

1

**ARGUMENT**

2

3

**Defendant Afsarpour's Spread Bets On InterMune Common Stock And Options Were Placed "In Connection With" The Offer Or Sale Of A Security**

4

Section 10(b) of the Securities Exchange Act makes it "unlawful for any person . . . [t]o

5

use or employ, **in connection with** the purchase or sale of any security . . . any manipulative or

6

deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may

7

prescribe." 15 U.S.C. § 78j(b) (emphasis added). Rule 10b-5, which implements this provision,

8

prohibits the use "in connection with the purchase or sale of any security" of "any device,

9

scheme, or artifice to defraud" or any other "act, practice, or course of business" that "operates . .

10

. as a fraud or deceit." 17 C.F.R. § 240.10b-5.

11

In civil cases, the question of whether an instrument is a security is a question of law for

12

the court to decide. *McNabb v. SEC*, 298 F.3d 1126, 1130 (9th Cir. 2002); *see also Fraglin v.*

13

*Mezei*, No. 09 Civ. 10287 (ANJ), 2012 WL 3613813, at *8 n. 3 (S.D.N.Y Aug 22, 2012). Here,

14

there is no dispute that InterMune common stock and InterMune options are as a matter of law

15

securities. Furthermore, as the factual record has developed, there is also no dispute that IG

16

hedged Afsarpour's spread betting by purchasing these InterMune securities. Accordingly,

17

whether Defendant Afsarpour's spread bets were made "in connection with" the purchase or sale

18

of security should be resolved by this Court as a matter of law. *See, e.g., SEC v. Zandford*, 114

19

Fed. Appx. 118 (4th Cir. Md. 2004), *on remand from* 535 U.S. 813 (2002) (no genuine issue of

20

material fact as to the "in connection with" element entitles SEC to partial summary judgment).

21

The Supreme Court has often stated that the Exchange Act should be "construed 'not

22

technically and restrictively, but flexibly to effectuate its remedial purposes.'" *SEC v. Zandford*,

23

535 U.S. 813, 819 (2002) (citations omitted). In *Zandford*, the Supreme Court held that in order

24

for a fraudulent scheme or device to meet the "in connection with" requirement of Section 10(b),

25

"the securities transaction and breaches of fiduciary duty [must] *coincide*." (emphasis added).

26

535 U.S. at 825. The Ninth Circuit has further explained the *Zandford* standard by noting that

27

the allegations of fraud must "'coincide' with the securities transaction" and be "easily

28

characterized as having 'more than some tangential relation to' the securities themselves."

1    *Falkowski v. Imation Corporation*, 309 F.3d 1123, 1131 (9th Cir. 2002).  The Ninth Circuit has

2    held that "in connection with" is met if the alleged fraud "somehow touches upon" or has "some

3    nexus" with "any securities transaction," and the meaning of "in connection with" in SEC

4    actions "remains as broad and flexible as is necessary to accomplish the statue's protective

5    purposes."  *SEC v. Rana Research, Inc.*, 8 F.3d 1358, 1362 (9th Cir. 1993).  Finally, the Ninth

6    Circuit has held that liability under Section 10(b) extends "beyond those who actually trade

7    securities to include those who know their fraudulent activities will affect the market."  *McGann

8    v. Ernst & Young*, 102 F.3d 390, 395 (9th Cir. 1996).[1]

9          In determining if the spread bets at issue here were "in connection with" and coincided

10   with a purchase or sale of a security, the case of *SEC v. Suterwalla* is instructive.  2008 WL

11   9371764 (S.D. Cal., Feb. 4, 2008).  In that case, the defendant purchased call options for Petco

12   on a domestic exchange and placed spread bets on the same security with an English brokerage

13   house.  *Id.* at *1.  Rather than dismiss the action, the court held that because the English

14   brokerage house purchased Petco call options to hedge the defendant's spread bets the

15   "connection between the insider trading and the spread bets is not so attenuated as to deprive the

16   SEC of its' enforcement authority over an individual in Britain."  *Id*. at *3.

17         When this Court earlier considered the question of whether Afsarpour's spread bets were

18   "in connection with" the purchase or sale of a security, it held that if the SEC alleged (and if the

19   facts were to show) that IG hedged its exposure to Afsarpour's spread bets by purchasing

20   InterMune securities before the InterMune announcement on December 17, 2010, then the

21   "making of the spread bets based on confidential insider information – is 'connected with' the

22   purchase of InterMune securities."  (Order, Dkt 36 at 16).  Here, the undisputed evidence of

23   record shows that IG, as a hedge against Afsarpour's spread bets, purchased common stock and

24   options from exchanges in the United States before December 17, 2010.  (Smith Decl. Ex. 6).

25

26   [1] Although other courts have recently held that products similar to spread bets are "securities"
     under the Exchange Act, *see, e.g., SEC v. Banc de Binary, Ltd.*, 964 F.Supp.2d 1229 (D. Nev.
27   2013), this Court need not make such a ruling here because it is clear that the spread bets by
     Afsarpour, whether securities or not, were in connection with the purchase of securities.
28

Thus, the foreign spread bets actually hedged by IG's purchase of stock and call options on the

underlying security from an exchange in the United States creates a sufficient connection to

domestic securities, as defined by the Exchange Act.[2]  There being no genuine issue of material

fact in dispute concerning IG's hedging of Afsarpour's bets, Afsarpour's spread bets were "in

connection with" the purchase or sale of a security, and the Court should decide partial summary

judgment in favor of the SEC as a matter of law.[3]

**CONCLUSION**

For the reasons stated above, combined with the supporting evidence accompanying this

motion, the SEC respectfully asks that the Court grant its motion for partial summary judgment.

Dated: July 21, 2016                          Respectfully submitted,

                                              /s/ James E. Smith_____
                                              KENNETH W. DONNELLY
                                              JAMES E. SMITH

                                              Attorneys for Plaintiff
                                              SECURITIES AND EXCHANGE COMMISSION

---

[2] Similarly, because Afsarpour's spread bets were in connection with the offer or sale of security, they fall within the jurisdiction of the Exchange Act, as decided by the recent decision in *Morrison v. National Australia Bank, Ltd.*, 561 U.S. 247 (2010).  As in *SEC v. Compania Internacional Financiera S.A.*, 2011 WL 3251813 at *6 (S.D.N.Y July 29, 2011), where the District Court for the Southern District of New York held that London-based CFD purchases (using inside information) fell within the Commission's regulatory authority because the CFDs were "[clearly] the use of a manipulative or deceptive device or contrivance . . . in connection with the purchase or sale of a security listed on an American stock exchange[,]" the same is true here.  Afsarpour's spread bets resulted in IG's purchase of InterMune securities from a United States exchange, conduct that is clearly with the jurisdiction of the Exchange Act.

[3] *See Naff v. State Farm Gen. Ins. Co.*, 2016 U.S. Dist. LEXIS 86854, *16 (E.D. Cal., July 3, 2016) ("Rule 56 allows a court to grant summary adjudication, or partial summary judgment, when there is no genuine issue of material fact as to a particular claim or portion of that claim."); Fed. R. Civ. P. 56(a) (party may move identifying "the part of each claim or defense … on which summary judgment is sought" and the court "shall grant summary judgment" if the movant is entitled as a matter of law); Fed. R. Civ. P. 56(g) (court may "enter an order stating any material fact … that is not genuinely in dispute and treating the fact as established in the case").