UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>SASAN SABRDARAN, et al.,<br><br>Defendants. | Case No. 14-cv-04825-JSC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 66 |

Plaintiff Securities and Exchange Commission ("SEC") alleges that Defendants Sasan Sabrdaran ("Sabrdaran") and Farhang Afsarpour ("Afsarpour," and together, "Defendants") violated the antifraud provisions of the Securities Exchange Act of 1934 ("Exchange Act"). (*See* Dkt. No. 38.[1]) The gravamen of the First Amended Complaint ("FAC") is that Defendants engaged in insider trading; specifically, that Sabrdaran, an employee of pharmaceutical company InterMune, Inc. ("InterMune"), tipped Afsarpour to material non-public information about the progress through the European regulatory approval process of Esbriet, one of InterMune's products, and that Afsarpour acted on that tip by engaging in transactions in connection with InterMune securities. (*Id.* ¶ 1.)

Now pending before the Court is the SEC's motion for partial summary judgment on whether Afsarpour's spread bets were made in connection with the purchase or sale of a security. (Dkt. No. 66.) Afsarpour and Sabrdaran each filed an opposition. (Dkt. Nos. 70, 71.) The Court held a hearing on August 25, 2016, and ordered the parties to submit supplemental briefing as to the level of knowledge required for the "in connection with" element. The SEC and Afsarpour

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

thereafter submitted their respective briefing. (Dkt. Nos. 78, 98.) After carefully considering the arguments and briefing submitted, the Court concludes that, to establish a securities violation under Section 10(b) or Rule 10b-5, the SEC need not necessarily prove that Afsarpour subjectively knew that his fraudulent activity was "in connection with the purchase or sale of any security." The Court, however, is not convinced on the present record that a reasonable trier of fact must find that Afsarpour's spread bets were in connection with the purchase or sale of a security and therefore DENIES the SEC's motion for partial summary judgment.[2]

**I.     "In Connection With" Requirement**

Rule 10b-5, enacted pursuant to Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), sets forth alternative bases for securities fraud liability. In addition to prohibiting (1) the "mak[ing of] any untrue statement[s]," Rule 10b-5 also prohibits (2) the use, "in connection with the purchase or sale of any security," of "any device, scheme, or artifice to defraud" or any other "act, practice, or course of business" that "operates . . . as a fraud or deceit." 17 C.F.R. § 240.10b-5.

At issue here is the requirement that a defendant's fraudulent conduct be "in connection with the purchase or sale of any security." The parties dispute the level of knowledge that a defendant must have that his fraudulent activity is "in connection with the purchase or sale of any security" in order to be liable under the securities laws. Specifically the parties dispute whether, to prove that Afsarpour's spread bets were made "in connection with the purchase or sale of any security," the SEC must show that Afsarpour knew that IG Index Limited, a London-based online betting firm with which Afsarpour bet, would in fact hedge his spread bets with securities in the U.S. markets. The Court concludes that in this situation no such knowledge is required.

Initially, the plain language of Section 10(b) and Rule 10b-5 states only that it is unlawful to engage in the proscribed fraudulent activities "in connection with the purchase or sale of any security"—that is, there is no requirement that the defendant have knowledge of such connection in order to be liable. *See* 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5. And with respect to "the scope of conduct prohibited by § 10(b), the text of the statute controls [the Court's] decision."

---

[2] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 11, 12, 27.)

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 173 (1994).

Further, the Supreme Court in *SEC v. Zandford*, 535 U.S. 813 (2002), made clear that to meet the "in connection with" requirement, "the securities transaction[ ] and breaches of fiduciary duty" merely must "coincide." *Id.* at 824-25. Interpreting *Zandford*, the Ninth Circuit has explained that the allegations of fraud merely must "'coincide' with the securities transaction" and be "easily characterized as having 'more than some tangential relation to' the securities themselves." *Falkowski v. Imation Corp.*, 309 F.3d 1123, 1131 (9th Cir. 2002) (citation omitted), *amended by* 320 F.3d 905 (9th Cir. 2003), *abrogation on other grounds recognized by Proctor v. Vishay Intertech. Inc.*, 584 F.3d 1208 (9th Cir. 2009); *see also Ambassador Hotel Co. v. Wei-Chuan Inv.*, 189 F.3d 1017, 1026 (9th Cir. 1999) ("The court should consider whether the plaintiff has shown some causal connection between the fraud and the securities transaction in question."). Along similar grounds, the Ninth Circuit has held that the "in connection with" test is "as broad and flexible as is necessary to accomplish the statute's protective purposes[,]" and is met if the alleged fraud "somehow touches upon" or has "some nexus" with "any securities transaction[.]" *SEC v. Rana Research, Inc.*, 8 F.3d 1358, 1362 (9th Cir. 1993) (citations omitted).

The court's decision in *SEC v. Suterwalla*, No. 06-CV1446 DMS LSP, 2008 WL 9371764 (S.D. Cal. Feb. 4, 2008), is instructive here. There, the SEC accused a British stockbroker of using material, non-public information about a company's business negotiations to place spread bets with a U.K.-based brokerage firm banking on an increase in the company's value. *Id.* at *1-2. The same day that the defendant placed his spread bets—and sometimes within two minutes—the U.K.-based brokerage firm purchased call options of the company on United States exchanges to hedge its risk from those bets. *Id.* at *3. While the SEC alleged that the defendant "knew" the spread bets would be hedged because he was a stockbroker, that fact was not determinative in whether the "in connection with" requirement was satisfied. Rather, it was the alleged course of conduct itself—whereby the defendant's spread bets "triggered the virtually contemporaneous purchase of a corresponding amount of [ ] securities," *id.*—that satisfied the "in connection with" requirement. As the court noted, "Given this consistent practice, the connection between the insider trading and the spread bets [was] not so attenuated as to deprive the SEC of its

3

enforcement authority over an individual in Britain." *Id.*

In sum, the SEC must prove that there was some nexus or relationship between the spread bets on InterMune stocks and the purchase of the InterMune stocks themselves. *See Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit*, at 427 (2007 Ed.) (Instruction 18.0). Afsarpour's knowledge of that nexus or relationship—that is, the connection to the purchase or sale of a security—while certainly potentially relevant, is not an element of the "in connection with" requirement.

## II.     Summary Judgment

Given the testimony as to the delay between the spread bets and IG Index's hedges, *compare Suterwalla*, 2008 WL 9371764, at *3 (the defendant's spread bets triggered the "virtually contemporaneous purchase" of corresponding securities), the evidence that IG Index stated only that it "may" hedge Afsarpour's spread bets (*see* Dkt. No. 66-7 at 24), and the evidence that IG Index did not always hedge Afsarpour's spread bets (*see id.* at 4-6), among other evidence, the Court cannot conclude that every reasonable trier of fact would have to find that Afsarpour's spread bets were made "in connection with the purchase or sale of any security." Accordingly, the SEC's motion for partial summary judgment is DENIED.[3]

## CONCLUSION

For the reasons stated above, the Court DENIES the SEC's motion for partial summary judgment.

**IT IS SO ORDERED.**

Dated: September 14, 2016

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge

---

[3] Defendants also raised various evidentiary objections in response to the SEC's motion for summary judgment. Because the Court is denying the motion, the Court denies Defendants' objections as moot. The Court will instead address the similar evidentiary issues raised in context of Defendants' motions *in limine*.