MARK P. FICKES (SBN 178570)
THERESE Y. CANNATA (SBN 88032)
KIMBERLY A. ALMAZAN (SBN 288605)
AARON R. FIELD (SBN 310648)
CANNATA, O'TOOLE, FICKES & ALMAZAN LLP
100 Pine Street, Suite 350
San Francisco, CA 94111
Telephone: (415) 409-8900
Facsimile: (415) 409-8904
Email: mfickes@cofalaw.com

Attorneys for Defendant
SASAN SABRDARAN

CHRISTOPHER C. COOKE (SBN 142342)
MURPHY COOKE COBRICK LLP
177 Bovet Rd., Suite 600
San Mateo, CA 94402
Telephone: (650) 638-2370
Facsimile: (650) 350-4333
Email: ccooke@mckllp.com

Attorneys for Defendant
FARHANG AFSARPOUR

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> SASAN SABRDARAN and FARHANG AFSARPOUR, <br><br> Defendants. | CASE NO. 3:14-cv-04825-JSC <br><br> REPLY IN SUPPORT OF MOTION OF DEFENDANTS SASAN SABRDARAN AND FARHANG AFSARPOUR FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE A NEW TRIAL <br><br> Date: March 9, 2017 <br> Time: 9:00am <br> Location: Courtroom F., 15th Floor <br> Before: Hon. Jaqueline Scott Corley |

# TABLE OF CONTENTS

I.      INTRODUCTION…………………………………………………………..1

II.     ARGUMENT ………………………………………………………………... 2

        A.      The Court Has the "Duty" to Reweigh the Evidence…...……………………………2

        B.      The SEC Has Failed to Vindicate the Jury's Finding that Dr. Sabrdaran Tipped Mr. Afsarpour ………………………………………………………………….4

        C.      Loose Talk Between Friends Does Not Satisfy the Personal Benefit Requirement ………………………………………...…………………………..6

        D.      The Court Should Grant a New Trial Because Mr. Afsarpour's Spread Bets Were Not "In Connection With" the Purchase or Sale of a Security in the United States …………………………………………………………………11

                1.      The Jury Instruction on the "In Connection With" Element Was Prejudicial, Not Harmless Error…………………………………………11

                2.      The Evidence at Trial Demonstrated That Mr. Afsarpour's Spread Bets Were Not in Connection with a Violation of SEC Rule 10b-5…………..14

III.    CONCLUSION………………………………………………………………15

CANNATA, O'TOOLE, FICKES & ALMAZAN LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986). ...................................................................................... 5

*Parhat v. Gates,*
    532 F.3d 834 (D.C. Cir. 2008) ....................................................................... 8

*City of Pontiac Policemen's and Firemen's Ret. System, et al. v. UBS AG, et al.,*
    752 F.3d 173 (2d Cir. 2014).................................................................... 14, 15

*Cohen v. Hansen,*
    2016 U.S. Dist. LEXIS 55976 (D. Nev. Apr. 27, 2016) ......................................12

*Dirks v. SEC,*
    463 U.S. 646 (1983) ........................................................................... *passim*

*Frymire-Brinati v. KPMG Peat Marwick,*
    2 F.3d 183 (7th Cir. 1993) ............................................................................ 12

*Haddad v. Lockheed California Corp.,*
    720 F.2d 1454 (9th Cir. 1983) ...................................................................... 12

*Hunter v. City and County of S.F.,*
    2013 WL 6086078 (N.D. Cal. Nov. 19, 2013) ...........................................3, 4

*Johnson v. Paradise Valley Unified School Dist.,*
    251 F.3d 1222 (9th Cir. 2001)................................................................ ...2, 3

*Landes Cost. Co., Inc. v. Royal Bank of Can.,*
    833 F.2d 1365 (9th Cir. 1987)................................................................ ... 3, 4

*McGann v. Ernst & Young,*
    102 F.3d 390 (9th Cir. 1996)......................................................................... 12

*Moist Cold Refrigerator Co. v. Lou Johnson Co.,*
    249 F.2d 246 (9th Cir. 1957)..................................................................... 2, 3

*Molski v. M.J. Cable, Inc.,*
    481 F.3d 724 (9th Cir. 2007).............................................................. 1, 2, 3, 4

*Morrison v. Nat'l Australia Bank, Ltd.,*
    561 U.S. 247 (2010). ...................................................................... *passim*

*Murphy v. City of Long Beach,*
    914 F.2d 183 (9th Cir. 1990)................................................................ 2, 3, 12

*Richardson v. United States,*
    526 U.S. 813 (1999)..................................................................................... 13

*Roy v. Volkswagen of Am., Inc.,*
    896 F.2d 1174 (9th Cir. 1990)......................................................................... 3

**REPLY IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE
ALTERNATIVE A NEW TRIAL**

*Salman v. United States*,
　__ U.S. __, 2016 WL 7078448 (Dec. 6, 2016) .......................................................... *passim*

*Schad v. Arizona*,
　501 U.S. 624 (1991). .............................................................................................. 13

*SEC v. Alejandro Duclaud Gonzalez de Castilla*,
　184 F. Supp. 2d 365 (S.D.N.Y. 2002)...................................................................... 5

*SEC v. Goldinger*,
　106 F.3d 409 (9th Cir. 1997)..................................................................................... 5

*SEC v. Jensen*,
　835 F.3d 1100 (9th Cir. 2016)................................................................................. 13

*SEC v. Maillard*,
　2014 U.S. Dist LEXIS 56456 (S.D.N.Y. Apr. 23, 2014)........................................ 15

*SEC v. Quan*,
　2014 U.S. Dist. LEXIS 131618 (D. Minn. Sept. 19, 2014) ................................... 13

*SEC v. Rorech*,
　720 F. Supp. 2d 367 (S.D.N.Y. 2010)...................................................................... 5

*SEC v. Truong*,
　98 F. Supp. 2d 1086 (N.D. Cal. 2000). .................................................................... 5

*Semerenko v. Cendant Corp.*,
　223 F.3d 165 (3d Cir. 2000)................................................................................... 12

*Tompkins v. 23andMe, Inc.*,
　2014 WL 2903752 (N.D. Cal. Jun. 25, 2014). ...................................................... 13

*Tortu v. L.V. Metro. Police Dept.*,
　556 F.3d 1075 (9th Cir. 2009)................................................................................... 2

*United States v. Lyons*,
　472 F.3d 1055 (9th Cir. 2007)................................................................................. 13

*United States v. Newman*,
　773 F.3d 438 (2d Cir. 2014)................................................................................. 8, 9

*United States v. Vilar*,
　729 F.3d 62 (2d Cir. 2013)..................................................................................... 15

//

//

//

REPLY IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE
ALTERNATIVE A NEW TRIAL

CANNATA, O'TOOLE, FICKES & ALMAZAN LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

**FEDERAL STATUTES**

17 C.F.R. § 240.10b-5 ........................................................................................ . *passim*

17 C.F.R. § 240.13a-4 ................................................................................................. .13

Fed. R. Civ. P. 51(d)(2)…………………………………………………………..…9

Fed. R. Civ. P. 61 ..................................................................................... ……...12

**OTHER AUTHORITIES**

Ninth Circuit Manual of Model Jury Instructions
    Civil §18. Securities Exchange Act……………………………………………11

RUTTER GROUP PRACTICE GUIDE: FEDERAL CIVIL TRIALS AND EVIDENCE
    § 20:104 (Rutter Group 2016) …………………………………………………..2

CANNATA, O'TOOLE, FICKES & ALMAZAN LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

iv

I.      **INTRODUCTION**

The SEC's opposition to the motion for judgment as a matter of law or in the alternative a new trial fails to vindicate the jury verdict. The SEC's arguments are premised on a misunderstanding of the complex legal issues presented and the relevant legal standards at issue. The SEC's arguments are also inconsistent with the record as evidenced by the paucity of the citations to support the SEC's claims.

*First*, the SEC's assertions that the Court may order a new trial only if the jury verdict is not supported by substantial evidence and may not weigh the evidence are contrary to established Ninth Circuit law. The Court has the "duty" to "weigh the evidence as the court saw it, and to set aside the verdict of the jury, *even though supported by substantial evidence*, where, in the court's conscientious opinion, the verdict is contrary to the clear weight of the evidence." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (emphasis added, internal punctuation omitted). The Court need not view the evidence in the light most favorable to the SEC, and is free to draw its own inferences.

*Second*, the SEC has failed to establish that the jury's finding that Dr. Sabrdaran tipped Mr. Afsarpour relied on anything but strained inferences and speculation. The SEC claims that Dr. Sabrdaran tipped Mr. Afsarpour during a conversation on December 10, 2010, but the record reveals a pattern of trading that is inconsistent with that theory and more susceptible to an innocent explanation. The SEC's argument to the contrary is founded entirely on its misunderstanding of the law governing new trial motions. Moreover, the SEC fails to provide even one record citation in support of its position that a tip occurred, which verifies that its position is without merit.

*Third*, the personal benefit requirement requires the Court to grant this motion. The SEC's contention that *Dirks* and *Salman* authorize a personal benefit finding based on loose talk among friends contradicts both decisions. In *Dirks*, the Supreme Court held that Dirks's insider tippers had *not* satisfied the personal benefit requirement *even though they knew that Dirks was an investment analyst who would share the tips with his clients who, in turn, would trade on them*, because they "received no monetary benefit for revealing . . . secrets, nor was

their purpose to make a gift of valuable information to Dirks." *Dirks v. SEC*, 463 U.S. 646, 667, 667 n.27 (1983). In *Salman*, the Supreme Court reaffirmed that this was "dispositive" in *Dirks*, and held that Salman's insider tipper had satisfied the personal benefit requirement only after acknowledging that he conceded "he shared insider information with his brother to benefit him and with the expectation that his brother would trade on it." *Salman v. Untied States*, __ U.S. __, 2016 WL 7078448, at **6-8 (Dec. 6, 2016). Applying the correct personal benefit standard, this Court should grant this motion.

*Fourth*, the Court should set aside the verdict because the jury instruction on the "in connection requirement" was erroneous and prejudicial and evidence regarding the spread bets demonstrates that they were not domesticated securities transactions under *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010).

## II.    ARGUMENT

### A.    The Court Has the "Duty" to Reweigh the Evidence

It is well established that the Court must reweigh the evidence on a motion for new trial. In deciding whether to grant a motion for new trial, this Court has the "duty" to "weigh the evidence as the court saw it, and to set aside the verdict of the jury, *even though supported by substantial evidence*, where, in the court's conscientious opinion, the verdict is contrary to the clear weight of the evidence." *Molski*, 481 F.3d at 729 (emphasis added, internal punctuation omitted); *accord Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990); *Moist Cold Refrigerator Co. v. Lou Johnson Co.*, 249 F.2d 246, 256 (9th Cir. 1957). This is "a fact-specific endeavor," *Molski*, 481 F.3d at 729, which involves an evaluation of what the Court was "able to see" and "hear" firsthand at trial, *see Tortu v. L.V. Metro. Police Dept.*, 556 F.3d 1075, 1088 (9th Cir. 2009). "The court does not presume that the verdict is correct; nor need it view the evidence in the light most favorable to the party in whose favor the verdict was rendered." Hon. Robert E. Jones, et al., RUTTER GROUP PRACTICE GUIDE: FEDERAL CIVIL TRIALS AND EVIDENCE (2016) § 20:104.

The SEC's assertions that the Court should not order a new trial because substantial

evidence supports the verdict and is prohibited from reweighing the evidence contradict well-established law. *Molski*, 481 F.3d at 729; *accord Murphy*, 914 F.2d at 187; *Moist Cold Refrigerator Co.*, 249 F.2d at 256. These assertions are not only wrong, but invite reversible error. *See Landes Cost. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1372 (9th Cir. 1987) (noting that an order on a motion for new trial is reversible when the court "concludes that it may not weigh the evidence").

To support its description of the legal standard, the SEC relies primarily on the Court's decision in *Hunter v. City and County of San Francisco*, Case No. C11–4911 JSC, 2013 WL 6086078, at *2 (N.D. Cal. Nov. 19, 2013), and the Ninth Circuit's decisions in *Johnson v. Paradise Valley Unified School Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001) and *Roy v. Volkswagen of America, Inc.*, 896 F.2d 1174, 1179 (9th Cir. 1990). Docket No. 174 at 1:26-2:6, 2:24-3:4. However, the SEC misreads all three of these cases.

In *Hunter*, the Court recognized that it had a "duty" to reweigh the evidence on a motion for new trial, and fulfilled that duty in a detailed assessment of the evidence presented by both sides. *Hunter*, 2013 WL 6086078, at **2-4. The Court then denied the motion because it was not "clear" that the jury had erred based on this thorough vetting of the record, not because there was "substantial evidence" to support the jury verdict. *Id*. at *4. To the extent that the Court suggested otherwise by referencing "substantial evidence" in the "Legal Standard" section of its decision, the suggestion was dicta.

*Johnson* and *Roy* also do not support the SEC's position. In *Johnson*, the Ninth Circuit held that the jury verdict must be upheld if it is supported by "substantial evidence" on a renewed motion for judgment as a matter of law, *not* a motion for new trial. *Johnson*, 251 F.3d at 1226-29. In *Roy*, the Ninth Circuit held that where the evidence on both sides was "substantially balanced," the Court should deny a motion for new trial out of deference to the jury's fact finding role, but also verified that the Court may weigh the evidence and that a verdict "clearly against the weight of the evidence" warrants a new trial. *Roy*, 896 F.2d at 1179.

//

The Court should treat a jury verdict with some deference. That is why a Court may not grant a motion for new trial unless it has a firm conviction that the jury has made a mistake. *See Hunter*, 2013 WL 6086078, at *7 (citing *Landes Const. Co., Inc.*, 833 F.2d at 1371). But that does not alter the Court's well-established "duty" to reweigh the evidence in applying this standard. *Hunter*, 2013 WL 6086078, at *2; *Molski*, 481 F.3d at 729.

**B.**     **The SEC Has Failed to Vindicate the Jury's Finding That Dr. Sabrdaran Tipped Mr. Afsarpour**

The clear weight of the evidence indicates that Dr. Sabrdaran never tipped Mr. Afsarpour. The SEC's theory, as of the time of closing arguments, was that the actionable tip in this case occurred during a twenty-one minute telephone call on December 10, 2010. *See* Docket No. 170-1, Ex. I at 2608:20-24, Ex. 396 at 4. But the SEC presented only tenuous circumstantial evidence at trial supporting this theory, and has identified no evidence at all on this point in its opposition. Docket No. 174 at 2:7-3:6. Moreover, the evidence indicates that the SEC's theory it is incorrect.

*First*, Mr. Afsarpour's investment pattern was not tethered to his December 10, 2010 call with Dr. Sabrdaran. Docket No. 170 at 4:18-5:2. Mr. Afsarpour began placing bets on InterMune in October, 2010, and placed one such bet on InterMune on December 10, 2010 two hours before the alleged tip. Docket No. 170-1, Ex. 61. There was ample public information available to warrant bets on InterMune regardless of whether Mr. Afsarpour knew someone who worked there. *See, e.g.*, Docket No. 170-1, Ex. 239 at 5. And there are other credible explanations for Mr. Afsarpour's investment activity. *See* Docket No. 170-1, Ex. E at 1546:14-1547:24, Ex. F at 1901:20-1902:13.

*Second*, the record indicates that Dr. Sabrdaran did not disclose any material nonpublic information on December 10, 2010. Docket No. 170 at 6:17-7:2. Dr. Sabrdaran and Mr. Afsarpour testified that no material nonpublic information changed hands on December 10, 2010. Docket No. 170-1, Ex. E at 1590:19-20, Ex. G at 2108:17-20. Dr. Sabrdaran testified that, at the time, he had only a seventy to seventy-five percent degree of confidence that Esbriet would soon be approved. Docket No. 170-1, Ex. G at 2093:23-2094:2. Dr. Sabrdaran

explained that he called Mr. Afsarpour to advise him that he would not be traveling to London later in the month. Docket No. 170-1, Ex. G at 2082:23-2083:14. Mr. Afsarpour testified that technical analysis indicators urged him to buy beginning on December 10, 2010. Docket No. 170-1, Ex. E at 1546:14-1547:24. Mr. Rogerson testified that he had independently urged Mr. Afsarpour to invest in spread bets that assumed Esbriet would be approved on December 17. Docket No. 170-1, Ex. F at 1901:20-1902:13. In addition, Dr. Sabrdaran was shocked and angry to learn, on December 17, 2010, that Mr. Afsarpour had been betting on InterMune stock. Docket No. 170-1, Ex. E at 1583:21-1586:13, 1589:15-1591:17, 1668:12-18, Ex. G at 2108:1-2111:16, 2113:2-15, Ex. I at 2535:20-22, Ex. 241T.

Where the SEC has founded a securities law claim on speculation and inferences from circumstantial evidence, but the record reveals that there are much more credible innocent explanations for the circumstantial evidence, there is insufficient evidence to warrant a verdict in the SEC's favor. *See* Docket No. 170 at 3:24-5:13 (citing *SEC v. Goldinger*, 106 F.3d 409 (9th Cir. 1997); *SEC v. Rorech*, 720 F. Supp. 2d 367 (S.D.N.Y. 2010); *SEC v. Alejandro Ducland Gonzalez de Castilla*, 184 F. Supp. 2d 365 (S.D.N.Y. 2002); *SEC v. Truong*, 98 F. Supp. 2d 1086 (N.D. Cal. 2000)). The SEC does not seriously dispute this proposition. Docket No. 170 at 2:7-3:6. Rather, it makes two abbreviated legal arguments on the issue: (1) that the rules governing motions for new trial prohibit the reweighing of evidence, Docket No. 174 at 2:20-3:4, and (2) that the fact that three of the four cases cited in support of this portion of the motion involved summary judgment makes them materially distinguishable, Docket No. 174 at 3:4. The first argument fails for the reasons stated above. *See supra*, at § III.A. The second argument fails because favorable summary judgment decisions support this motion more powerfully than favorable new trial decisions, not less. A court may only grant summary judgment if there is no "evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). If the evidence is so scant that no reasonable juror could find in the SEC's favor, doing so would be contrary to the clear weight of the evidence *a fortiori*.

*//*

## C.  Loose Talk Between Friends Does Not Satisfy the Personal Benefit Requirement

That loose talk among friends cannot satisfy the personal benefit requirement follows directly from the reasoning and holdings in *Dirks* and *Salman*. Both decisions make clear that the sort of "personal benefit" necessary to establish a breach of fiduciary duty by an insider may be direct or indirect, Docket No. 170, 8:1-10:24, that a direct personal benefit is a benefit of at least a potential gain of a pecuniary or similar nature to the tipper, Docket No. 170 at 11:24-12:27, and that an indirect personal benefit is a disclosure made with intent to benefit the tippee, Docket No. 170 at 13:1-25.  As a result, they establish that a personal benefit finding may not be based on loose talk between friends that was not intended to benefit anyone.  Docket No. 170 at 11:24-13:25.

In *Dirks*, the Supreme Court held that Dirks's insider tippers had *not* satisfied the personal benefit requirement *even though they knew or had reason to know that Dirks would share the tips with his clients who, in turn, would trade on them and repay Dirks with further business*, because the insider tippers "received no monetary benefit for revealing . . . secrets, nor was their purpose to make a gift of valuable information to Dirks."  *Dirks*, 463 U.S. at 648-49, 667, 667 n.27 (emphasis added); *see also Dirks v. SEC*, 681 F.2d 824, 829 (D.C. Cir. 1982), *rev'd on other grounds*, 463 U.S. 646 (1983). Dirks was a respected investment advisor who "regularly provided investment advice to a number of institutions that he knew had invested or might be interested in investing in insurance company stocks." *Dirks*, 681 F.2d at 829, *rev'd on other grounds*, 463 U.S. 646 (1983).

> [H]e had no formal relationship with these institutions; he simply tried to be aware of their investment objectives and strategies, and to inform them whenever he developed information that he thought would be of interest to them.  Under the custom of the industry, Dirks received no direct compensation from these clients.  Rather, if they thought the information Dirks gave them was valuable, they would direct some of their brokerage business through Delafield Childs, thus giving Dirks' firm a chance to earn brokerage commissions.

*Id*. Dirks's tippers specifically sought him out, and were aware of his reputation. *Id.* at 830. They received no direct valuable benefit in exchange for their tips, but they all knew or had reason to know that Dirks would use their tips to facilitate his clients' trades for his financial

benefit.  *Id.*; *see also Dirks*, 463 U.S. at 668-69 (Blackmun, J., dissenting) (noting that, in disclosing inside information to Dirks, Dirks's initial tipper "intended that Dirks would disseminate the information to his clients, those clients would unload their Equity Funding securities on the market, and the price would fall precipitously, thereby triggering a reaction from the authorities").

The Supreme Court held that Dirks's disclosures to his clients did not constitute a violation of SEC Rule 10b-5 because the tippers did not breach any fiduciary duty when they tipped Dirks, despite the fact that they knew or had reason to know that he would use the information to his personal advantage. *Dirks*, 463 U.S. at 667. In doing so, it adopted the rule that where a tipper receives "no monetary benefit for revealing . . . secrets" and does not tip with the "purpose to make a gift of valuable information," the tipper has not satisfied the personal benefit requirement, has not breached a fiduciary duty, and has not conferred a derivative fiduciary duty on the tippee. *Id.*; *see also Dirks*, 463 U.S. at 667 n.27 (rejecting the SEC's argument that "an insider invariably violates a fiduciary duty to the corporation's shareholders by transmitting nonpublic corporate information to an outsider when he has reason to believe that the outsider may use it to the disadvantage of the shareholders").

In *Salman*, the Supreme Court verified that the absence of a direct personal benefit and the purpose of making a gift of valuable information were "dispositive" of the outcome in *Dirks*. *Salman*, 2016 WL 7078448, at **6-8. It held that Salman's insider tipper had satisfied the personal benefit requirement only after acknowledging that the insider tipper conceded that "he shared insider information with his brother to benefit him and with the expectation that his brother would trade on it." *Id*.

The SEC's contention that *Dirks* and *Salman* authorize a personal benefit finding based on loose talk among friends or a benefit as intangible as friendship is based on dicta presented without context, fails to grapple with the substance of Dr. Sabrdaran's argument, and is inconsistent with these decisions' holdings. The SEC correctly notes that these decisions state that a "gift" of confidential information can satisfy the personal benefit

requirement. Docket No. 174 at 5:1-21. The question is what the word "gift" means in this context. *Dirks* holds that a knowing or reckless tip is not a sufficient "gift" to satisfy the personal benefit requirement; to satisfy the personal benefit requirement, a tip that does not directly benefit to the tipper must "resemble trading by the insider himself followed by a gift of the profits to the recipient" in that it is provided with the "purpose" of benefitting the tippee. *Dirks*, 463 U.S. at 664, 667. Where the tipper receives nothing of value for a tip and lacks any intent to benefit the tippee, *Dirks* holds (and *Salman* affirms) that the tipper has not breached a fiduciary duty.

The SEC asserts that Dr. Sabrdaran's and Mr. Afsarpour's analysis is "tortured" and "convoluted" and that "[n]othing" in either *Dirks* or *Salman* supports their argument. Docket No. 174 at 5:25, 6:9-10, 6:14 n.3. That is false, and the SEC's repetition of this assertion does not prove otherwise. *Cf. Parhat v. Gates*, 532 F.3d 834, 848-49 (D.C. Cir. 2008) ("Lewis Carroll notwithstanding, the fact that the government has "said it thrice" does not make an allegation true."). As explained in detail our opening brief and in section II.C, *supra*, *Dirks* and *Salman* sturdily support Dr. Sabrdaran's and Mr. Afsarpour's position. The SEC's failure to cite even one case in which a court held that loose talk between friends, without evidence of intent to benefit, was sufficient to satisfy the personal benefit requirement verifies the weakness of their argument. To the extent that this Court has lingering doubts, it need only look to the oral argument in *Salman*, where the government took a position that closely resembles Dr. Sabrdaran's and Mr. Afsarpour's position here. *See* Docket No. 170-2, Ex. A at 25:3-26:3, 26:21-24, 30:3-15, 30:19-31:9.

This Court should reach the merits of Dr. Sabrdaran's and Mr. Afsarpour's personal benefit argument. The SEC errs by suggesting that they have waived their right to argue that the jury instructions were incorrect because they were inconsistent with the correct personal benefit standard. *See* Docket No. 174 at 4:5-21. Dr. Sabrdaran and Mr. Afsarpour objected to the SEC's proposed jury instruction on the personal benefit requirement on the grounds that it was inconsistent with the Second Circuit's decision in *United States v. Newman*, 773 F.3d

438, 452 (2d Cir. 2014) and proposed an alternative that would have prohibited a personal benefit finding based on loose talk between friends. Docket No. 94 at 5:20. The instructional error portion of this motion is based on similar grounds. *Compare* Docket No. 94 at 5:20 *with* Docket No. 170 at 13:1-25. Moreover, Dr. Sabrdaran and Mr. Afsarpour may found their motion for new trial on this instructional error regardless of whether they sufficiently objected before if the Court's instructions constitute a harmful "plain error." Docket No. 170 at 3:10-16; Fed. R. Civ. P. 51(d)(2). The instructions do constitute such an error here, because they contradict *Dirks* and *Salman* and the SEC heavily relied on them. Docket No. 170 at 14:1-15:20. In any event, the SEC's waiver argument is limited to the instructional error claim; the SEC does not contest that Dr. Sabrdaran and Mr. Afsarpour are free to raise the paucity of personal benefit evidence in support of their motion for new trial based on the weight of the evidence and their renewed motion for judgment as a matter of law. *See* Docket No. 174 at 4:5-21.

Applying the correct personal benefit standard, this Court should grant Defendants' motion for three reasons:

*First*, this Court should order a new trial because the jury instructions incorrectly advised that loose talk among friends satisfies the personal benefit requirement, and the SEC relied heavily on that representation to the detriment of Defendants. Docket No. 170 at 14:1-15:20. This Court advised the jury that a personal benefit "includes . . . friendship" and that a tip need only be "reckless" to be actionable, Docket No. 154 at 27, 29, 33, and the SEC announced to the jury that the personal benefit here was the "relationship, the continued nurtured relationship of a long term friend," Docket No. 170-1, Ex. I at 2619:10-12. The SEC claims that this is consistent with *Dirks* and *Salman*. Docket No. 174 at 5:1-6:14. But friendship is insufficient to satisfy the personal benefit requirement; the tipper must receive something of value for the tip, or make a gift of the tip with the intent to benefit the tippee. The SEC does not contend that this error was harmless. Docket No. 174 at 3:7-7:12.

*Second*, the Court should order a new trial because the record demonstrates that Dr.

Sabrdaran did not disclose anything to Mr. Afsarpour in exchange for something of a pecuniary or similar nature or with the intent to benefit him. Docket No. 170 at 15:21-16:18. The record contains no credible evidence that Dr. Sabrdaran received anything of a pecuniary or similar nature in exchange for his tip, which inspired the SEC to rely heavily on the fact of his friendship with Mr. Afsarpour in its closing argument. *See* Docket No. 170-1, Ex. I at 2619:10-12. The record also belies the notion that Dr. Sabrdaran disclosed anything with the intent to benefit Mr. Afsarpour. The SEC contends that Dr. Sabrdaran tipped Mr. Afsarpour during a call on December 10, 2010. Docket No. 170-1, Ex. I at 2608:20-24, Ex. 396 at 4. However, Dr. Sabrdaran and Mr. Afsarpour both testified that no material nonpublic information changed hands on December 10, 2010. Docket No. 170-1, Ex. E at 1590:19-20, Ex. G at 2108:17-20. Dr. Sabrdaran and Mr. Afsarpour testified that Dr. Sabrdaran learned of Mr. Afsarpour's trading for the first time on December 17, 2010, and that Dr. Sabrdaran was furious. Docket No. 170-1, Ex. E at 1583:21-1586:13, Ex. G at 2108:1-2111:16. The written exchange between Dr. Sabrdaran and Mr. Afsarpour on December 19, 2010 reveals that Mr. Afsarpour offered an olive branch to Dr. Sabrdaran at that time. The only credible explanation presented by either party for the olive branch is that Mr. Afsarpour was seeking forgiveness from Dr. Sabrdaran for investing in InterMune without his knowledge. Docket No. 170-1, Ex. E at 1586:14-20, 1589:15-1591:17, 1668:12-18, Ex. G at 2113:2-15, Ex. I at 2535:20-22, Ex. 241T. This is irreconcilable with the notion that Dr. Sabrdaran tipped Mr. Afsarpour with the intent to benefit him.

The SEC's response to this argument fails. *See* Docket No. 174 at 6:15-7:12. The SEC cites no facts and no new cases in support of its position on this issue. Docket No. 174 at 6:15-7:12. Instead, it relies exclusively on its misunderstanding of personal benefit law and the law governing new trial motions. *See* Opposition at 6:15-7:12. Neither vindicates the jury's verdict; this Court must weigh the evidence against the correct personal benefit standard and hold that, under the correct personal standard, the weight of the evidence contradicts the verdict.

*Third*, the Court should grant judgment as a matter of law in favor of Dr. Sabrdaran and Mr. Afsarpour because the record contains no substantial evidence that Mr. Afsarpour knew that Dr. Sabrdaran tipped in exchange for something of a pecuniary or similar nature or with the intent to benefit him. Docket No. 170 at 17:20-18:2. Because the record belies the notion that Dr. Sabrdaran tipped Mr. Afsarpour for a personal benefit, the record contains no substantial evidence that Mr. Afsarpour knew that Dr. Sabrdaran tipped him for a personal benefit *a fortiori*.

The SEC argues that the Court has resolved this issue, Docket No. 174 at 7:3-12, but that is not correct. The Court ruled that the record supports the inference that "there was something wrong with the relationship" between Dr. Sabrdaran and Mr. Afsarpour. Docket No. 174-2 at 130. However, the record does not support an inference that Dr. Sabrdaran received something of a pecuniary or similar nature in exchange for a tip, or that Dr. Sabrdaran tipped with intent to benefit Mr. Afsarpour. Thus, *a fortiori*, the record does not support an inference that Mr. Afsarpour knew that Dr. Sabrdaran tipped him for a personal benefit either.

### D. The Court Should Grant a New Trial Because Mr. Afsarpour's Spread Bets Were Not "In Connection With" the Purchase or Sale of a Security In The United States

#### 1. The Jury Instruction on the "In Connection With" Element Was Prejudicial, Not Harmless Error

The jury instruction that the Court gave on the "in connection with" element was based on the Ninth Circuit Manual of Model Civil Jury Instructions, General Instruction 18, but this instruction was only approved for use in cases involving false and misleading representations based on SEC Rule 10b-5(b), not insider trading cases based on SEC Rule 10b-5(a) and (c). *See* Ninth Circuit Manual of Model Jury Instructions, Civil, Section 18; Securities Exchange Act, Introductory Comment (emphasis added). While this does not mean by itself that the instruction was erroneous, the Court's "nexus" jury instruction on the "in connection with" element is

1  inconsistent with *McGann v. Ernst & Young*, 102 F.3d 390, 395 (9th Cir. 1996), and similar

2  cases[1] holding that a non-trading defendant must know of the impact of his conduct on the

3  United States securities markets to be held liable for a violation of Section 10(b) of the

4  Securities Exchange Act of 1934, and SEC Rule 10b-5. "Erroneous jury instructions, as well as

5  the failure to give adequate instructions, are grounds for a new trial unless the error is

6  harmless." *Cohen v. Hansen*, Case No. 2:12-CV-1401 JCM (PAL), 2016 U.S. Dist. LEXIS

7  55976, at *6 (D. Nev. Apr. 27, 2016) (citing *Murphy*, 914 F.2d at 187).[2]

8    Here, the SEC's contention that any error in this jury instruction was harmless must be

9  rejected. While the jury could have based its finding of liability on Mr. Afsarpour's purchase of

10  75 shares of InterMune common stock, it is sheer speculation to assume that it did so. The

11  special verdict form did not ask the jury to make findings about which transactions satisfied the

12  "in connection with" element. The SEC presented and argued vociferously during the trial that

13  both the stock purchases and the spread bets satisfied this element. Apart from the "nexus"

14  instruction, the jury was not given any specific guidance about the circumstances in which a

15  spread bet might be deemed to be "in connection with a securities transaction" such that it

16  violates SEC Rule 10b-5. Finally, as explained in section III.D.2 *infra*, the evidence the SEC

17  introduced regarding the spread bets and IG's hedging, as a matter of law, could satisfy this

18  element because these transactions do not violate SEC Rule 10b-5, as construed by the Supreme

19  Court in *Morrison v. National Australia Bank, Ltd.*, 561 U.S. 247 (2010). Therefore, the Court

20  has no way of knowing if the jury based its finding on Mr. Afsarpour's purchase of 75 shares of

21  InterMune common stock (a permissible basis for liability) or on his placing of the spread bets

22  (an impermissible basis of liability).[3]

23  _____

24  [1] *Semerenko v. Cendant Corp.*, 223 F.3d 165, 175 (3d Cir. 2000); *Frymire-Brinati v. KPMG Peat Marwick*, 2 F.3d 183, 189 (7th Cir. 1993).

25  [2] The Court determines whether an error is harmless or prejudicial based on whether the
26  claimed error affects the substantial rights of the parties. *See* Fed. R. Civ. P. 61. The Court examines the claimed error in light of the jury instructions, the verdict form, and the evidence in the record and arguments of counsel. *See Haddad v. Lockheed Cal. Corp.*, 720 F.2d 1454
27  (9th Cir. 1983) (discussing and applying harmless error analysis in a civil case).
[3] The Court deferred ruling on this issue at the beginning of the case (*see SEC v. Sabrdaran*,
28  Case No. 14–cv–04825–JSC, 2015 U.S. Dist. Lexis 25051 (N.D. Cal. Mar. 2, 2015)), but the

The SEC's reliance on *Richardson v. United States*, 526 U.S. 813 (1999) and similar cases[4] to the effect that the jury did not have to be unanimous on which transaction satisfied the "in connection with" requirement is misplaced. This argument assumes that the jury could find that either the stock transactions or the spread bets could satisfy the "in connection with" element, based on the evidence at trial. *See Richardson*, 526 U.S. at 817 (use of a knife or gun could equally establish the use of force element for robbery). Here, as explained below, Mr. Afsarpour's spread bets and IG Index's hedging of them did not violate SEC Rule 10b-5.

The SEC's argument that the Spread Betting Agreement, by itself, (Docket No. 174-4) supports the interpretation that the jury found that Mr. Afsarpour knew that his spread bets caused transactions in the U.S. securities markets is misplaced. There is no evidence that Mr. Afsarpour read this multi-page agreement, which was one of many pages of records that Mr. Afsarpour purportedly "digitally" accepted when he opened his account with IG Index. The contract cases the SEC cites in its opposition, Docket No. 174 at 8, which hold that a party presumed to have read an agreement and is bound by its terms as a matter of contract and arbitration law (*see, e.g.*, *Tompkins v. 23andMe, Inc.*, Case Nos. 5:13-CV-05682-LHK, et. al., 2014 WL 2903752 (N.D. Cal. Jun. 25, 2014)) are irrelevant to the factual issue before the jury, which was whether Mr. Afsarpour knew his transactions resulted in U.S. securities transactions.[5]

This argument ignores the testimony of Mr. Noble and the evidence from IG Index's tape-recorded phone calls with Mr. Afsarpour. Mr. Noble admitted that the Spread Betting Agreement only advised customers that it might hedge their bets, not that IG Index would always do so. (Docket No. 170-1, Ex. B at 920:12-19.) The Spread Betting Agreement was

---

time has come to address *Morrison*'s application to the spread bets.

[4] *See, e.g., Schad v. Arizona*, 501 U.S. 624 (1991), *United States v. Lyons*, 472 F.3d 1055 (9th Cir. 2007), *SEC v. Quan*, No. CIV. 11–723 ADM/JSM, 2014 U.S. Dist. LEXIS 131618 (D. Minn. Sept. 19, 2014).

[5] Likewise, *SEC v. Jensen*, 835 F.3d 1100 (9th Cir. 2016) is irrelevant because it involves a legal obligation (a CEO required to certify that he has read and affirms the accuracy of a company's public filings under SEC Rule 13a-4), it does not address an factual issue, whether the signer knew of the facts in the document being signed.

ambiguous as to how IG Index would hedge—by a swap in an over the counter transaction or by effecting a purchase or sale of a security and did not inform the customer that hedging would cause a transaction in the United States securities markets. Mr. Noble admitted that IG Index representatives did not explicitly tell Mr. Afsarpour that it was going to hedge his spread bets by entering into transactions in the U.S. securities markets. (Docket No. 170-1, Ex. B at 920:20-921:23.)

### 2. The Evidence at Trial Demonstrated That Mr. Afsarpour's Spread Bets Were Not in Connection with a Violation of SEC Rule 10b-5

The SEC's argument that the it did demonstrate at trial that Mr. Afsarpour's spread bets were in connection with the purchase or sale an InterMune security in the United States is wrong. Contrary to the SEC's assertions, the IG Index witnesses (Ms. Messer and Mr. Noble) confirmed that IG hedged Mr. Afsarpour's spread bets by purchasing swaps and engaging in other activities outside of the United States. Ms. Messer confirmed that IG used swaps with counterparties as the means to hedge its exposure on spread bets, that it did not itself purchase securities. (Docket No. 170-1, Ex. A at 759:12-17.) The only original documentary evidence regarding IG's hedging of Mr. Afsarpour's spread bets introduced at trial was a contract for difference between IG and Cheuvreux, entered into in London, the United Kingdom, Docket No. 174-3, (Docket No. 170-1, Ex. 264, Ex. B at 923:6-11.), Mr. Noble did not know whether Cheuvreux actually purchased InterMune securities in the United State. (Docket No. 170-1, Ex. B at 926:20-23, 913:1-7, and 914:21-23.) The SEC also did not introduce any records as to how and where IG Index hedged Mr. Afsarpour's spread bets.

The SEC's evidentiary showing does not begin the meet its burden, under *Morrison v. National Australia Bank Ltd.*, to show either that (1) the defendant himself engaged in a purchase or sale of a security listed on a United States securities exchange, or, (2) for transactions in unlisted securities, engaged in a U.S. domesticated securities transaction. 130 S. Ct. at 2888. The second prong of *Morrison* requires the SEC to show that "the parties incur irrevocable liability to carry out the transaction within the United States or when title is passed within the United States." *City of Pontiac Policemen's and Firemen's Ret. System, et al. v. UBS*

*AG, et al.*, 752 F.3d 173, 181 (2d Cir. 2014); *see also United States v. Vilar*, 729 F.3d 62, 76 (2d Cir. 2013) ("Under *Morrison*, a defendant may be convicted of securities fraud under Section 10(b) and Rule 10b-5 if he has engaged in fraud with respect to either (1) a security listed on an American exchange, or (2) a security purchased or sold in the United States.").

Mr. Afsarpour's spread bets were placed with IG Index in the United Kingdom; they were not placed on a U.S. domestic stock exchange. There is no evidence that Mr. Afsarpour's spread bets resulted in IG Index incurring irrevocable liability in the United States to carry out a securities transaction or that IG Index received title to a security in the United States. Indeed, Mr. Noble admitted that, under the contract for difference with Cheuvreux, IG did not receive title to any InterMune securities. (Docket No. 170-1, Ex. C at 1001:10-1003:3.) And the SEC introduced no evidence regarding who received title to any InterMune options it contended resulted from IG Index's hedging of Mr. Afsarpour's spread bets, or where such title was passed. Under *Morrison*, the jury verdict cannot be based upon Mr. Afsarpour's spread bets.[6] *See SEC v. Maillard*, No. 13–cv–5299 (VEC), 2014 U.S. Dist. LEXIS 56456 at *12 (S.D.N.Y. Apr. 23, 2014) (*Morrison* might require dismissal of insider trading lawsuit if the counterparty to CFD was not the defendant's agent and if location of transaction was not in the U.S.).[7]

## III.   CONCLUSION

For the foregoing reasons, Dr. Sabrdaran and Mr. Afsarpour respectfully request that this Court set aside the jury verdict and grant their motion for judgment as a matter of law or, in the alternative, a new trial.

//

//

//

---

[6] There is a legal issue as to whether Dodd Frank overruled *Morrison*. We will address this issue in our briefing on the remedies issues. *See Sabrdaran*, 2015 U.S. Dist. LEXIS 25052, at *46.

[7] In addition, as explained in our opening brief, the SEC's sole documentary evidence of IG Index's hedging activities, (Docket No. 170-1, Exs. 218 and 219), are inadmissible hearsay. The SEC's opposition ignores the Court's comments indicating that it might revisit this ruling because of evidence heard from IG Index's witnesses. (Docket No. 133 at 977:15-20.)

Dated:  January 27, 2017        CANNATA, O'TOOLE, FICKES & ALMAZAN LLP

/s/ Mark P. Fickes
MARK P. FICKES
Attorneys for Defendant
SASAN SABRDARAN

Dated:  January 27, 2017        MURPHY COOKE KOBRICK LLP

/s/ Christopher C. Cooke
CHRISTOPHER C. COOKE
Attorney for Defendant
FARHANG AFSARPOUR

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

I, Mark P. Fickes, attest that concurrence in the filing of this Notice of Motion and Motion for Judgment as a Matter of Law or in the Alternative a New Trial has been obtained from the other signatories.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

/s/ Mark P. Fickes
MARK P. FICKES

**REPLY IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW
OR IN THE ALTERNATIVE A NEW TRIAL**